**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**NICHOLAS SUK,**

Plaintiff,

v.

**THE TRUSTEES OF PRINCETON UNIVERSITY** *D/B/A PRINCETON UNIVERSITY*,

Defendant.

Civil Action No. 25-18180 (ZNQ) (JTQ)

**OPINION**

**QURAISHI, U.S.D.J.**

This matter comes before the Court upon a Motion to Dismiss filed by Defendant The Trustees of Princeton University d/b/a Princeton University (hereinafter collectively referred to as "Defendant"). ("Motion," ECF No. 12.) Defendant filed a brief in support of the Motion. ("Moving Br.," ECF No. 12-1.) Plaintiff Nicholas Suk ("Plaintiff") filed an opposition ("Opp'n Br.," ECF No. 13), to which Defendant replied ("Reply Br.," ECF No. 14.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss will be **GRANTED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

This is an employment and disability discrimination case. Plaintiff brought this lawsuit against Defendant for violations of the Americans with Disabilities Act, as amended ("ADA" – 42 USC §§ 12101, *et. seq*.), the New Jersey Law Against Discrimination ("NJLAD"), the Family Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 *et. seq*.), and the New Jersey Family Leave Act

("NJFLA"). In the Complaint, Plaintiff alleges that he experienced unlawful workplace discrimination and retaliation, culminating in his termination from Defendant. ("Compl.," ECF No. 1, ¶ 1.)

Plaintiff was employed by Defendant for nearly one year, from approximately May 2024 through April 5, 2025, the date that he was terminated. (*Id.* ¶ 14.) Plaintiff was originally hired by a temp agency and placed to work for Defendant as an Animal Care Technician I in Defendant's Laboratory Animal Resources ("LAR") Department on or about May 20, 2024; thereafter, Plaintiff was hired as a full-time employee by Defendant on February 17, 2025. (*Id.* ¶¶ 15–16.) As a full-time employee, Plaintiff's primary supervisor was Brian Ludwig ("Ludwig") and Plaintiff's general supervisor was Susie Chow ("Chow"); during his time as a temporary employee, Plaintiff was supervised by Caroline Diordano ("Diordano"). (*Id.* ¶¶ 17–18.)

In February 2025, Plaintiff interviewed for a full-time role as a direct employee of Defendant, during which he informed his interviewers, including Diordano, that his wife was pregnant and was due in April 2025, and that Plaintiff was seeking a job with benefits and eligibility to take paternity leave following the birth of his child; Plaintiff also acknowledged that if he would not be "eligible for paid and/or protected leave (FMLA and NJ FLA qualifying) when his child was born, he would be taking unpaid and/or unprotected leave until he was eligible." (*Id.* ¶¶ 19–20.) Defendant hired Plaintiff as a full-time employee on February 17, 2025. (*Id.* ¶ 15.)

On March 1, 2025, Plaintiff suffered serious injuries to his leg/knee as a result of a skiing accident outside of work — Plaintiff suffered a torn ACL — which required Plaintiff to receive medical accommodations to fully perform his employment duties for Defendant. (*Id.* ¶¶ 22–29.) Defendant permitted Plaintiff to take a one-week medical leave following this accident based on the recommendation of Plaintiff's treating physician. (*Id.* ¶¶ 26–27.) On March 10, 2025,

following his medical leave, Plaintiff returned to work for Defendant with temporary restrictions on his abilities, as he had to limit his walking, sit when needed, and could not do any heavy lifting; however, Plaintiff purportedly did not inform Sherrie Borowsky ("Borowsky"), a manager of faculty and staff accommodations in Defendant's HR department, that he had torn his ACL or that he required temporary light-duty limitations of no lifting over ten pounds and breaks as needed to rest his leg/knee until March 21, 2025. (*Id.* ¶¶ 27–29.)

Nonetheless, on March 22, 2025, "Plaintiff was tasked with substantially more work and more hours, and Defendant required him to work against his restrictions" because Defendant was preparing for an inspection of its facilities. (*Id.* ¶ 30.) Plaintiff alleges that Defendant did not permit him to sit when needed, and Defendant required Plaintiff to lift over ten pounds, which collectively caused him to suffer increased pain and mobility issues in his leg/knee. (*Id.* ¶ 31.) That same day, Plaintiff complained to Defendant's management and requested help, and in response Defendant tasked its PRR Lead Animal Care Technician, Juan Mercardo ("Mercardo") to assist Plaintiff. (*Id.* ¶ 32.) Plaintiff alleges that Mercardo was unhelpful, had a poor attitude towards Plaintiff, was unable to properly perform his duties, and thereby caused Plaintiff to perform additional laborious work. (*Id.*) Thereafter, on March 25, 2025, Defendant tasked Plaintiff with training a Cage Wash Technician, Marcus Jones ("Jones"). (*Id.* ¶ 35.) When Plaintiff arrived at work that day, Jones was present but was not working, so Plaintiff confronted Jones; during that confrontation, Jones allegedly placed his hand on Plaintiff's chest, to Plaintiff's objection, and Plaintiff walked away. (*Id.* ¶¶ 35–36.) Later that day, after Defendant passed the inspection, Plaintiff was called into a meeting with Ludwig and Diordano, wherein Ludwig addressed the incident with Jones and asked Plaintiff to explain what happened. (*Id.* ¶¶ 37.) Ludwig told Plaintiff that Jones wanted to move past the incident and had been warned about

physical touching; Ludwig also told Plaintiff that he should try to move past the incident as well — something Plaintiff was willing to do. (*Id.* ¶ 38.) However, Plaintiff alleges that Ludwig also attempted to intimidate him by telling Plaintiff that "all I have to do is inform HR that I don't need you anymore." (*Id.* ¶ 39.)

Two days later, on March 27, 2025, Defendant's HR informed Plaintiff that he was being placed on a paid suspension, pending investigation into the alleged incidents with Mercardo and Jones. (*Id.* ¶ 40.) On April 1, 2025, Plaintiff was interviewed by Lisa Baratta ("Baratta"), Defendant's HR Director of Client Services and Academic Administration, wherein Plaintiff explained the incidents, telling her that: (i) he had simply been in pain and frustrated with the lack of accommodation from Defendant, (ii) Mercardo and Jones were not assisting Plaintiff or performing their job duties, (iii) Plaintiff never yelled, screamed, or acted aggressively towards them, and (iv) Jones physically touched Plaintiff without his permission. (*Id.* ¶¶ 41–42.) On April 2, 2025, Baratta called Plaintiff and terminated Plaintiff's employment with Defendant. (*Id.* ¶ 43.) The Complaint alleges that Mercardo and Jones were not terminated and still work for Defendant. (*Id.* ¶ 45.)

The Complaint also alleges that Defendant knew, prior to Plaintiff's termination, that Plaintiff may need time off for surgery for his leg/knee (because Defendant had paperwork from Plaintiff's treating physician), in addition to Plaintiff's plan to take paternity leave in April 2025 — the Complaint further avers that this time off would collectively qualify for FMLA and NJFLA leave on or about May 20, 2025, and that Plaintiff was terminated in part because Defendant wanted to avoid having to accommodate Plaintiff's medical/paternity leave under the FMLA and NJFLA. (*Id.* ¶¶ 46–47.)

Thus, the Complaint alleges that Defendant discriminated against Plaintiff, failed to accommodate his disability, fostered a hostile work environment that Plaintiff fell victim to, and retaliated against Plaintiff because of: "(1) his actual/perceived/record of disabilities; (2) his requested medical accommodations; and (3) Defendant's failure to properly accommodate Plaintiff's disabilities, by requiring Plaintiff to work against his restrictions and terminating him shortly after requesting/notifying Defendant of future paternity leave and/or medical leave for surgery." (*Id.* ¶ 48.)

Consequently, Plaintiff filed the present Complaint, alleging (1) discrimination, retaliation, hostile work environment, and failure to accommodate under the ADA (Count I) and NJLAD (Count II), and (2) interference and retaliation under the FMLA (Count III) and NJFLA (Count IV).

## II. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claims under federal law pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over his claims under state law pursuant to 28 U.S.C. § 1367.

## III. LEGAL STANDARD

A district court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion under 12(b)(6), the "defendant bears the burden of showing that no claim has been presented." *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Moreover, the court must accept as true all the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court,

however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

## IV. DISCUSSION

Defendant argues that the Complaint fails to state a claim under the FMLA, NJFLA, NJLAD, and ADA. The Court will first address Defendant's challenge to Plaintiff's ADA and NJLAD claims, and thereafter turn to the challenged FMLA and NJFLA claims.

### A. PLAINTIFF'S ADA AND NJLAD CLAIMS (COUNTS I AND II)

#### 1. Discrimination

The ADA and NJLAD prohibit discrimination on the basis of a disability. *Ali v. City of Newark*, Civ. No. 15-8374, 2019 WL 1326888, at *3 (D.N.J. Mar. 25, 2019); *see also* 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits ... of a public entity, or be subjected to discrimination by any such entity"); N.J. Stat. Ann. § 10:5-4 ("All persons shall have the opportunity to obtain . . . all the accommodations, advantages . . . and privileges of any place of public accommodation . . . without discrimination because of . . . disability").

To establish a *prima facie* case of discrimination under the ADA and NJLAD, a plaintiff must establish that he or she: (1) has a disability; (2) was otherwise qualified to participate in the activity or program at issue; and (3) was denied the benefits of the program or otherwise

discriminated against because of his or her disability. *See J.T. v. Dumont Pub. Schs.*, 103 A.3d 269, 263–64 (N.J. Super. Ct. App. Div. 2014) (assessing failure-to-accommodate disability discrimination claim) (citations omitted). The ADA "covers discrimination on the basis of disability, even if there is another cause as well." *CG v. Pennsylvania Dep't of Educ.*, 734 F.3d 229, 236 (3d Cir. 2013). The evidentiary burden at the *prima facie* stage is modest; "it is to demonstrate to the [C]ourt that plaintiff's factual scenario is compatible with discriminatory intent—i.e., that discrimination *could* be a reason for the [adverse] action." *Foster v. Kennedy Univ. Hosp., Inc.*, Civ. No. 20-4415, 2022 WL 2981156, at *8 (D.N.J. July 28, 2022) (quoting *Marzano v. Computer Sci. Corp. Inc.*, 91 F.3d 497, 508 (3d Cir. 1996)). To establish causation, the plaintiff must allege "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

Under the ADA, a qualified individual means "an individual with a disability who, with or without reasonable modification . . . meets the essential eligibility requirements for the receipt of services or the participating in programs or activities provided by a public entity." 42 U.S.C. § 1231(2). Although the NJLAD does not provide insight as to who may be a "qualified individual," the NJLAD's applicability is "subject only to [the] conditions and limitation applicable alike to all persons." N.J. Stat. Ann. § 10:5-4.

Here, Defendant argues that Plaintiff fails to plausibly allege that he was terminated because of his disability. (Moving Br. at 15.) Specifically, Defendant contends that Plaintiff relies solely on the temporal proximity of his disclosure of his disability and his termination, which is about one month. (*Id.* at 15–16.) Defendant avers that the Complaint fails to identify an

"intervening hostility," "discriminatory remarks," or "statements reflecting frustration with Plaintiff's injury or restrictions." (*Id.*) Rather, Defendant points out that the Complaint states that Defendant granted Plaintiff a one-week medical leave, permitted him to work with medical restrictions upon his return, and assigned coworkers to assist him. (*Id.* (citing Compl. ¶¶ 23–28, 32).)

Plaintiff contends that he has stated a disability discrimination claim because the Complaint alleges that he was terminated as a result of his disability and shortly after disclosing that disability to Defendant. (Opp'n Br. at 17–18 (citing Compl. ¶¶ 46, 48–49).) Plaintiff alleges that his suspension, which occurred 26 days after he reported his medical condition to Defendant and 16 days after he requested medical leave (which Defendant accommodated), are sufficient facts to state a claim. The Court is not persuaded by Plaintiff's temporal proximity argument for the primary reasons that (i) Defendant accommodated Plaintiff's medical leave request, (ii) the Complaint fails to allege any specific conduct by Defendant that suggests animosity or adverse action toward Plaintiff based on his disability, and (iii) the Complaint states that Plaintiff's suspension and termination occurred shortly after the incidents with Mercardo and Jones and Defendant's initiation of an investigation into that incident. Even drawing all reasonable inferences in favor of Plaintiff, the Complaint still falls short of establishing a causal connection, based on temporal proximity, between Plaintiff's disability and his suspension/termination.

The Court will therefore dismiss Plaintiff's ADA and NJLAD discrimination claims without prejudice.

2. Failure-to-Accommodate

To state a claim for failure-to-accommodate, the plaintiff must show that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance

for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 849 (3d Cir. 2016) (quotations omitted). Courts examine the same requirements to establish a failure to accommodate cause of action under the ADA and NJLAD. *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 n.12 (3d Cir. 2006) (citations omitted) ("The requirements for failure to accommodate claims under [the NJLAD] have been interpreted in accordance with the [ADA]."); *see also Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017). The NJLAD requires the employer to make reasonable accommodations for the employee. *Tourtellotte*, 636 F. App'x at 849. This burden does not require that the employer must make any particular concession, but rather that the employer make a good-faith effort to seek appropriate accommodations. *Capps*, 847 F.3d at 157. Under the ADA, an employer discriminates against a qualified individual with a disability when the employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Similarly, the NJLAD requires that "[a]n employer must make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." N.J.A.C. 13:13-2.5(b).

The ADA and NJLAD require a reasonable accommodation, not a perfect one, nor one that guarantees harmonious coworker interactions. *See Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 581 (3d Cir. 1998) (holding request to be transferred away from coworkers causing stress was

unreasonable as a matter of law because it would require the employer to dictate "with whom [plaintiff] will work" and "[n]othing in the ADA allows this shift in responsibility"); *Yovtcheva v. City of Phila. Water Dep't*, 518 F. App'x 116, 121 (3d Cir. 2013) (holding that an "employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation"); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999) (the interactive process requires a good-faith effort to explore possible accommodations, but "does not dictate that any particular concession must be made by the employer"); *Tynan v. Vicinage 13 of the Superior Court*, 351 N.J. Super. 385, 400 (App. Div. 2002) (the employer's duty to accommodate "does not require acquiescence to the employee's every demand").

The Complaint falls short of stating a cause of action that Defendant failed to accommodate Plaintiff's disability under the ADA and NJLAD. On March 21, 2025, Plaintiff informed Borowsky, an HR employee of Defendant, "that he had a torn ACL and required temporary light-duty limitations of no lifting over 10 (ten) pounds and breaks as need[ed] to rest his leg/knee." (Compl. ¶ 29.) On March 22, 2025, Plaintiff alleges that he "was tasked with substantially more work and more hours, and Defendant required him to work against his restrictions[,]" such that "Plaintiff was not permitted to sit when needed, and Defendant required Plaintiff to lift over 10 (ten) pounds[.]" (*Id.* ¶¶ 30–31.) However, later that same day, Plaintiff complained to Defendant's management and requested help, at which time Defendant immediately tasked Mercardo to assist Plaintiff with his job duties. (*Id.* ¶ 32.) Even if Defendant did not immediately accommodate Plaintiff just one day after being informed of his disability, Defendant did provide a reasonable accommodation the same day that Plaintiff complained, by tasking Mercardo to assist Plaintiff once Defendant learned that Plaintiff was unable to perform certain tasks. Notably, the employer

and the employee both "have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith." *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 771–72 (3d Cir. 2004). That appears to be what Plaintiff actually alleges here. That although Defendant failed to provide a reasonable accommodation the morning after learning of Plaintiff's restrictions, it did so the very same day once Plaintiff complained and sought assistance. Such conduct does not run afoul of Defendant's duty to reasonably accommodate; rather, the Complaint makes clear that Plaintiff requested help when he became aware that he was going to be working against his restrictions, and Defendant reasonably accommodated that request immediately by assigning Mercardo, and eventually Jones, to assist Plaintiff that same day.

As for his colleagues' assistance, Plaintiff alleges that: Mercardo "was not helpful, had a poor attitude towards Plaintiff, and was placing things in the way of Plaintiff which required him to perform additional laborious work" (Compl. ¶ 32.); and Jones "was not doing any work and just standing around" when Plaintiff arrived on site" (*id.* ¶ 35.) The lack of effectiveness of Mercardo and Jones in performing their duties, without more facts implicating Defendant, do not establish a claim for failure to accommodate. Rather, the Complaint alleges facts that establish Defendant offered an accommodation that addressed Plaintiff's limitations — Mercardo and Jones were assigned to relieve Plaintiff of any responsibility to perform physical activity that went beyond his restrictions. *See Hofacker v. Wells Fargo Bank Nat'l Ass'n*, 179 F. Supp. 3d 463, 470 (E.D. Pa. 2016) ("Although [the employer] did not get the accommodation [the plaintiff] desired, the accommodation offered . . . addressed all the limitations that her physician placed on her."). The Court declines to give credence to Plaintiff's failure to accommodate theory.

The Court will dismiss Plaintiff's ADA and NJLAD failure-to-accommodate claims without prejudice.

3. Hostile Work Environment

To succeed on a hostile work environment claim under the NJLAD or ADA, a plaintiff "must show that the complained of conduct . . . (1) would not have occurred but for the employee's protected status and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and the working environment is hostile or abusive." *Hurley v. Riverview Medical Center*, 2023 WL 4295820, at *13 (D.N.J. June 30, 2023). "Offhanded comments, and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment [claim]." *Id.* (quoting *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005) (internal quotation marks omitted) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998))). Thus, courts adopt a totality of the circumstances analysis, assessing "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Caver*, 420 F.3d at 262).

Here, Plaintiff contends that he has stated a claim for hostile work environment under the ADA and NJLAD because he alleges that: (1) Defendant assigned him substantially more work despite knowing about his disability and work-related restrictions; (2) forced him to work against those restrictions by lifting weight over 10 pounds; (3) failed to accommodate him by refusing to allow him to sit when needed; (4) threatened his job via comments like "all I have to do is inform HR that I don't need you anymore"; (5) suspended and terminated him due to conduct he did not engage in; and (6) treated him less favorably than Mercardo and Jones. (Opp'n Br. at 17 (citing Compl. 29–45).) Defendant argues that these allegations, taken together, do not amount to a hostile work environment, and at best the only allegation supporting an unpleasant workplace environment is the incident when Jones put his hand on Plaintiff's chest. (Moving Br. at 12–13.)

The Court agrees with Defendant. These allegations do not cumulatively establish a hostile work environment. As noted, isolated incidents, unless extremely serious, are not sufficient to state a hostile work environment claim. *Hurley*, 2023 WL 4295820, at *13; *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are inadequate). The other allegations concerning work Plaintiff was allegedly forced to do despite his disability occurred, (i) because Defendant was preparing for an inspection — not because of animus towards Plaintiff based on his disability,[1] and (ii) just one day after Plaintiff had informed Defendant about his disability. The Complaint clearly alleges that Defendant took accommodating action that same day to alleviate Plaintiff's concerns by tasking Mercardo, and then Jones, to assist Plaintiff at work. Once more, Plaintiff states no causal connection between these allegations and his disability — nowhere is it alleged that the incidents with Mercardo and Jones occurred due to Plaintiff's disability. The Complaint does not allege any comments, frustrations, or ridicule by Defendant, Mercardo, or Jones about Plaintiff's disability. At base, the alleged hostility draws an inference of workplace stress, coworker performance issues, and interpersonal conflict, none of which is actionable under the ADA or NJLAD.

Moreover, the Complaint alleges that Defendant immediately responded to Plaintiff's complaints on March 22, 2025 about his workload by assigning Mercardo and Jones to assist him. The Complaint also alleges that after the incident with Jones, Defendant addressed the incident with both Jones and Plaintiff, encouraged them to move past it, and initiated an HR investigation. (Compl. ¶¶ 37–40.) The Complaint does not allege any further incidents after Defendant addressed this conduct with the individuals involved. Where it is clear that the employer took prompt remedial action to a plaintiff's complaint and such action put an end to the harassment, courts

[1] The Complaint alleges that the pre-inspection period was "a very stressful and frustrating time for everyone involved." (Compl. ¶ 37.)

dismiss hostile work environment claims. *See Weston v. Pennsylvania*, 251 F.3d 420, 427–28 (3d Cir. 2001) (affirming dismissal on a Title VII hostile work environment claim where the Complaint showed that the employer's intervention stopped the harassment); *Steiner v. Giant of Md., LLC*, 2023 WL 4421373, at *4 (D. Del. July 10, 2023) (dismissing Title VII hostile work environment claim where complaint made clear defendant took prompt remedial action to plaintiff's complaint).

The Court will dismiss Plaintiff's ADA and NJLAD hostile work environment claims without prejudice.

4. <u>Retaliation</u>

Under the ADA and NJLAD, it is unlawful to retaliate against or intimidate any individual because he or she has opposed any act or practice made unlawful by the ADA or NLJAD. *Cottrell v. Rowan University*, 786 F. Supp. 2d 851, 858 (D.N.J. 2011) (citing 42 U.S.C. § 12203; N.J.S.A. 10:5–12(d), (e)); *see Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir.1997) ("Unlike a plaintiff in an ADA *discrimination* case, a plaintiff in an ADA *retaliation* case need not establish that he is a qualified individual with a disability.") (emphasis in original) (quotations omitted). "To state a claim for retaliation under the ADA or NJLAD, Plaintiff must . . . show 1) that she requested a reasonable accommodation, 2) that she suffered an adverse employment action, and 3) a causal connection between the two events." *Solanki v. Ashland*, Civ. No. 23-22638, 2026 WL 207249, at *5 (D.N.J. Jan. 27, 2025). A plaintiff must show that "intentional discrimination was the *but for* cause of the allegedly discriminatory action." *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 301 (3d Cir. 2007) (emphasis in original). "A plaintiff can demonstrate causation by alleging (1) 'a close temporal relationship between the protected activity and the adverse employment action,' or (2) facts that, 'looked at as a whole, raise the inference of

causation.'" *Solanki*, 2026 WL 207249, at *5 (quoting *Carmichael v. Thomson*, Civ. No. 14-3323, 2023 WL 1883347, at *9 (D.N.J. Feb. 10, 2023)).

Plaintiff's claims for retaliation under the ADA and NJLAD fail on the causation element. Plaintiff alleges that Defendant terminated him in retaliation for his accommodation and leave requests. (Compl. ¶¶ 46–49.) Plaintiff's allegations that he was suspended 26 days after he reported his medical condition to Defendant and 16 days after he requested medical leave, and ultimately terminated shortly after his suspension, do not amount to an unduly suggestive temporal proximity so as to raise an inference of causation. (*Id.*) The Third Circuit has "never held that a temporal gap of one month alone sufficiently demonstrates a causal connection." *Tirk v. Dubrook, Inc.*, 673 F. App'x 238, 241 (3d Cir. 2016). Given the circumstances and incidents that led up to Plaintiff's suspension and termination, the Court is not persuaded to import Plaintiff's theory that his suspension and termination were not due to those incidents, but rather retaliatory action in response to his requests for medical leave or accommodation. The Complaint does not create an inference of causation. Instead, the only plausible reading of the Complaint suggests that Plaintiff was terminated due to his involvement in two separate incidents with fellow employees Mercardo and Jones, whereafter Defendant investigated the incidents and suspended and subsequently terminated Plaintiff as a result. (Compl. ¶¶ 32–36, 37–40, 43.) Finally, the Court has already explained that the Complaint makes clear that Defendant accommodated Plaintiff's requests for accommodations and medical leave when he requested them. The Complaint fails to state a claim for retaliation under the ADA or NJLAD.

The Court will therefore dismiss Plaintiff's ADA and NJLAD retaliation claims without prejudice.

### B. PLAINTIFF'S FMLA AND NJFLA CLAIMS (COUNT III AND IV)

Defendant principally contends that Plaintiff has not, and cannot, state a claim under the FMLA or NJFLA because he does not qualify as an "employee" eligible for protection under these statutes. Defendant avers that Plaintiff's failure to qualify as an employee in these circumstances is fatal to not only his interference claims, but also his retaliation claims. (Moving Br. at 4–8.) To state a claim for interference under the FMLA, a plaintiff must allege that: (1) the employee was eligible; (2) the employer was subject to FMLA requirements; (3) the employee was entitled to FMLA leave; (4) the employee provided notice of their intent to take FMLA leave; and (5) the employee was denied benefits. *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014). Courts apply the same standards and framework to claims under the NJFLA. *Santosuosso v. NovaCare Rehabilitation*, 462 F. Supp. 2d 590, 596 n.4 (D.N.J. 2006). To state a claim of retaliation under the FMLA, a plaintiff must allege that: (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012). The same is required under the NJFLA. *Wolpert v. Abbott Laboratories*, 817 F. Supp. 2d 424, 437 (D.N.J. 2011). The Third Circuit has made clear that, to pursue either an FMLA interference or retaliation claim, a plaintiff must establish that he was protected under the Act, which requires demonstrating that he was an "eligible employee" and entitled to FMLA leave. *White v. SP Plus Corp.*, 858 F. App'x 488, 489–90 (3d Cir. 2021) (citing *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508–09 (3d Cir. 2009); *Capps v. Mondelez Glob.*, LLC, 847 F.3d 144, 155 (3d Cir. 2017); 29 U.S.C. § 2611(2)).

Thus, in order to state a claim for interference and/or retaliation under the FMLA or NJFLA, Plaintiff must allege facts to show that he is an eligible employee under these statutory

frameworks. And that failure is the heart of Defendant's argument for dismissal. To qualify as an eligible employee, a person must have been employed "for at least 12 months" and "for at least 1,250 hours of service" during the 12-month period preceding the commencement of the requested leave. 29 U.S.C. §2611(2)(A). Similarly, under the NJFLA, an "employee" is a person employed "for at least 12 months" who has worked "not less than 1,000 base hours during the immediately preceding 12-month period." N.J.S.A. 34:11B-3(e). Moreover, the 1,250 service hours requirement is calculated "during the 12-month period immediately preceding the commencement of the leave." 29 C.F.R. 825.110(a)(2) (emphasis added). "[W]hether an employee meets the hours of service requirement and has been employed by the employer for a total of at least 12 months ***must be made as of the date the FMLA leave is to start***." 29 C.F.R. 825.110(d) (emphasis added). The NJFLA's regulations similarly provide that "[a]n employee is entitled to a family leave for the birth . . . of a child if the employer falls within the statutory definition of employer ***at the time leave commences*** and the leave begins within one year of the birth or placement for adoption or foster care of the child." N.J.A.C. 13:14-1.5(c) (emphasis added).

The Court finds this statutory language dispositive in that Plaintiff does not qualify as an employee under the FMLA or NJFLA under the circumstances of his request for paternity leave. While the "FMLA regulatory scheme must necessarily protect pre-eligible employees . . . who put their employers on notice of a post-eligibility leave request[,]" *Sine v. Rockhill Mennonite Home*, 275 F. Supp. 3d 538 542–43 (E.D. Pa. 2022), that scheme is not intended to protect pre-eligibility requests for leave that will commence *before* the individual becomes eligible for protected leave. *Walker v. Elmore County Board of Education*, 379 F.3d 1249 (11th Cir. 2004).

Indeed, in *Walker*, the Eleventh Circuit addressed a nearly identical fact pattern to Plaintiff's request for paternity leave and found that the FMLA does not protect a pre-eligibility

request for a pre-eligibility leave. Specifically, the plaintiff provided notice of her intent to take maternity leave, which would have commenced on August 3, 2000. *Id.* at 1253. Meanwhile, the plaintiff's 12-month anniversary of employment with the defendant was August 9, 2000 — meaning the request was made by an ineligible employee for leave that was set to commence while she was still ineligible. *Id.* In affirming dismissal of the FMLA claim, the Eleventh Circuit proclaimed that "there can be no doubt that the request, made by an ineligible employee for leave that would begin when she would still have been ineligible, is not protected by the FMLA." *Id.*

The fact pattern in this action mirrors that in *Walker* insofar as Plaintiff here, admittedly, was not an eligible employee under the FMLA or NJFLA when he (i) made the paternity leave request, or (ii) would have begun his paternity leave. To be sure, the *Walker* decision simply amplified the statutory framework of the FMLA, since the determination of eligibility for protected leave requires assessment of whether the individual qualifies as a protected employee "as of the date the FMLA leave is to start." 29 C.F.R. 825.110(d); *see also* N.J.A.C. 13:14-1.5(c) (explaining that an employee is entitled to protected NJFLA leave if the employer is obligated to provide such protection "at the time leave commences").

Plaintiff does not cite any authority to distinguish this case from *Walker*. Instead, Plaintiff cites a bevy of cases that dealt with pre-eligibility requests for post-eligible leave *commencements*. *See* Opp'n Br. at 9–12.) One of the cases that Plaintiff cites in support, *Potts v. Franklin Elec. Co.*, Civ. No. 05-433, 2006 WL 2474964, at *3 (E.D. Okla. 2006), exemplifies when the FMLA is intended to protect a pre-eligible employee: an employee who is not yet eligible for FMLA leave is entitled to put an employer on notice of his or her intent to take FMLA leave that begins *after* he or she becomes eligible. Plaintiff argues that Defendant's reading of the FMLA "completely undermine[s] the broad remedial purpose of the FMLA leave." (Opp'n Br. at 12.) The Court

disagrees. Plaintiff fails to cite, and the Court does not identify, a single case in which FMLA protected leave was extended where the requested leave was set to commence *before* the employee was to become eligible under the FMLA, and the Court declines to depart from existing authority that belies this theory.

Briefly addressing Plaintiff's retaliation claims, they too fail for the same reason: absent from Plaintiff's employment with Defendant is the existence of a protected right — he was not eligible for protected leave under the FMLA or the NJFLA, and so there can be no "retaliation" for exercising a right which Plaintiff did not possess. *See* 29 U.S.C. § 2615(a)(2).

Accordingly, the Court will dismiss Plaintiff's FMLA and NJFLA interference and retaliation claims (Counts III & IV) with prejudice.

## V. CONCLUSION

For the reasons stated above, the Motion to Dismiss will be **GRANTED**. The Court will **DISMISS WITHOUT PREJUDICE** Plaintiff's ADA and NJLAD claims (Counts I & II), and **DISMISS WITH PREJUDICE** Plaintiff's FMLA and NJFLA claims (Counts III & IV). Plaintiff will be given leave to file an Amended Complaint, limited to remedying the defects identified herein, within 30 days. Failure to cure the defects by that date may result in this matter being dismissed with prejudice. An appropriate Order will follow.

Date: **October 30, 2026**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**